Filed 8/5/26  In re M.G. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.G., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D087638 |
| Plaintiff and Respondent, | (Super. Ct. No. EJ004470) |
| v. | |
| C.G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Lilys McCoy, Judge.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Damon M. Brown, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Kristen M. Ojeil, Deputy County Counsel, for Plaintiff and Respondent.

Mother C.G. appeals an order terminating her parental rights to her child, M.G. Mother's sole contention on appeal is that the San Diego County Health and Human Services Agency failed to conduct an adequate inquiry into M.G.'s potential Native American ancestry as required under the Indian Child Welfare Act of 1978 (ICWA), title 25 United States Code section 1901 et seq., and Welfare and Institutions Code section 224 et seq. Resolving this matter by memorandum opinion (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851-854), we conclude the court did not err and therefore affirm.

## I.

This is M.G.'s second dependency case resulting from Mother's alcohol use and inability to provide care for M.G. During the first case, Mother denied having Native American ancestry and filed an ICWA-020 Parental Notification of Indian Status form stating the same. Mother did not believe that M.R. (Father), who remained an alleged father and whose whereabouts were unknown, had such ancestry. The juvenile court found ICWA did not apply. In May 2021, Mother and M.G. were reunified and the court terminated dependency jurisdiction.

In September 2023, the Agency filed a petition under section 300(b) after Mother failed to pick up M.G. from school and Agency workers observed Mother under the influence of alcohol while caring for M.G., in violation of a safety plan. In August 2025, the Agency located Father and a paternity test confirmed he was M.G.'s biological father. After an inquiry into Father's potential Native American ancestry, the juvenile court found without prejudice ICWA did not apply and terminated parental rights.

II.

Mother contends the Agency failed to fulfill its duty to inquire into Native American ancestry because it did not inquire of or attempt to contact Father's extended family members. We disagree.

California's statutory scheme contains "three distinct duties regarding ICWA in dependency proceedings." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) First, the juvenile court and the Agency have an "affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child." (§ 224.2(a).) This duty of inquiry requires asking parents, legal guardians, extended family members and others who have an interest in the child whether they have Native American ancestry. (§ 224.2(b)(2).)

Second, if the initial inquiry creates a "reason to believe" the child has Native American ancestry, the Agency is required to "make further inquiry regarding the possible Indian status of the child . . . as soon as practicable" (§ 224.2(e)) to "determine whether there is reason to know a child is an Indian child" (§ 224.2(e)(2)). This requirement involves further interviews with parents, Indian custodians, and extended family members to obtain information about possible tribal affiliations (§ 224.2(e)(2)(A)); contact with the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying and contacting relevant tribes (§ 224.2(e)(2)(B)); and contact with relevant tribes to permit them to determine the membership or eligibility status of the child (§ 224.2(e)(2)(C)). (*D.S.*, 46 Cal.App.5th at pp. 1052-1053.) "Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*D.S.*, at p. 1052.)

3

Generally, we review ICWA findings for substantial evidence. (§ 224.2(i)(2).) When the facts are undisputed, we independently determine ICWA compliance. (*D.S.*, 46 Cal.App.5th at p. 1051.)

ICWA does not require the Agency to search for and inquire about Indian ancestry with every conceivable family member. The duty of initial inquiry "'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.'" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1140.) Nor is the Agency required to "'cast about' for information or pursue unproductive investigative leads." (*D.S.*, 46 Cal.App.5th at p. 1053.) "[T]he obligation is only one of inquiry and not an absolute duty to ascertain or refute Native American ancestry." (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1413.)

Here, the Agency fulfilled its duty of inquiry. The parties do not dispute the Agency sufficiently inquired into M.G.'s maternal ancestry. On the paternal side, Father repeatedly denied to both the Agency and the juvenile court that he had knowledge of any Native American ancestry. Father also denied having any family members who were enrolled tribal members, received tribal assistance (financial, medical, or educational), or spoke a Native American language. Although Father believed that individuals of Native American ancestry had married into the family, he was unaware of any specific tribe and clarified that none were "'blood related.'" Thus, Father's personal knowledge did not provide a reason to believe M.G. had qualifying ancestry.

Father's wife similarly denied any knowledge of Native American ancestry on the paternal side. Father claimed that no other family members were likely to have additional information because the family's elders were deceased. Consistent with that explanation, Father identified no paternal

4

relatives and indicated he was not aware of any other individuals who might have relevant information. Under these circumstances, the Agency's inquiry created no reason to believe that M.G. had paternal Native American ancestry.

We are unpersuaded by Mother's argument that the Agency was required to seek out undisclosed extended family members. The Agency was not required to search for unidentified relatives or pursue speculative leads. (See *Dezi C.*, 16 Cal.5th at p. 1140.) While the better practice would have been for the Agency to ask Father for contact information of additional paternal relatives, section 224.2(b) does not mandate the Agency conduct an exhaustive search for possible Indian ancestry without regard to other practical limitations. (*In re H.B.* (2023) 92 Cal.App.5th 711, 720.) "Rather, [section 224.2(b)] is intended to ensure social workers 'ask an added question of extended family members whom [they] often already are investigating in their usual course of work.'" (*Ibid.*) While Father expressed reluctance to provide contact information for relatives in Tennessee due to his "safety concerns" with Mother, he ultimately identified his wife as an extended relative and claimed no other living relative was likely to have additional information. In finding ICWA did not apply, the court considered Father's wife's denial of Native American ancestry as well as Father's responses to ICWA questions. Requiring the Agency to "track down" or otherwise "intuit" names of undisclosed family members would impose an undue burden on the Agency. (*Ibid.*)

"The juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is a quintessentially discretionary function subject to a deferential standard of review." (*Dezi C.*, 16 Cal.5th at

p. 1141 [cleaned up].)  We thus conclude the court did not err by finding ICWA did not apply.

III.

We affirm.

CASTILLO, J.

WE CONCUR:

DATO, Acting P. J.

KELETY, J.